IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:13CR339 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| JORDIE L. CALLAHAN and | ) | GOVERNMENT'S SENTENCING |
| JESSICA L. HUNT, | ) | MEMORANDUM |
| | ) | |
| Defendants. | ) | |

Now comes the United States of America, by and through its counsel, Steven M. Dettelbach, United States Attorney, and Chelsea S. Rice and Thomas E. Getz, Assistant United States Attorneys, and respectfully submits this memorandum for the Court's consideration in determining the appropriate sentence for Defendants Jordie L. Callahan and Jessica L. Hunt. The Government will not recount the facts or evidence presented at trial. Instead, this pleading focuses on the Sentencing Guideline calculations and highlights the relevant facts and circumstances of the offenses pertinent to specific enhancements.

**MEMORANDUM**

**I.      Introduction**

Jordie L. Callahan and Jessica L. Hunt committed unspeakable acts of cruelty, abuse, and humiliation to a cognitively disabled woman and a young child.  For more than two years, the Defendants deprived S.E. of her unalienable rights to liberty and the pursuit of happiness – rights provided for in one of our country's founding documents, the Declaration of Independence, and the Thirteenth Amendment to the Constitution, which abolished slavery and involuntary servitude.  The Defendants treated S.E. and B.E. with less dignity and worth than their animals – the Defendants afforded S.E. and B.E. less worth than even their physical possessions.

The Defendants advisory guidelines range under the United States Sentencing Guidelines ("U.S.S.G.") is life imprisonment and this is the sentence both Callahan and Hunt deserve.  As will be discussed more fully at the sentencing hearing, a life sentence for Callahan and Hunt reflects the seriousness of their offense, affords just punishment, and protects the public from further crimes by the Defendants.

**II.     Advisory Guideline Calculations**

Both the Supreme Court and the Sixth Circuit have made clear that sentencing after *United States v. Booker*, 543 U.S. 220 (2005), must begin with a properly calculated advisory Sentencing Guidelines range.  *See Gall v. United States*, 552 U.S. 38 (2007).  In *Rita v. United States*, 551 U.S. 338 (2007), the Supreme Court held that courts of appeals may apply a non-binding presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines.  *Id*. at 347.  The Supreme Court further held that rather than having independent legal effect, the courts of appeals' "reasonableness" presumption "simply recognizes the real-world circumstance that when the district judge's discretionary

2

decision accords with the Commission's view of the appropriate application of §3553(a) in the mine run of cases, it is probable that the sentence is reasonable." *Id*. at 350-51.

To facilitate appellate review, the Sixth Circuit has encouraged the sentencing judge to "explicitly state his reasons for applying particular Guidelines, and sentencing within the recommended Guidelines range, or in the alternative, for choosing to sentence outside that range." *United States v. Jones*, 399 F.3d 640, 650 (6th Cir. 2005); *see also United States v. Haj-Hamed*, 549 F.3d 1020 (6th Cir. 2008).

### A. Base Offense Level

The Presentence Investigation Reports ("PSR")[1] for Defendant Callahan and Defendant Hunt both correctly cross-reference to the kidnapping guideline set forth at United States Sentencing Guidelines ("U.S.S.G.") § 2A4.1 and conclude that the applicable base offense level for the forced labor conviction is 32. As this Court is aware, Section 1589 permits a sentencing enhancement of up to life in prison if "the offense includes kidnapping or an attempt to kidnap." 18 U.S.C. § 1589(d). In accordance with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Indictment specifically alleged that the Defendants committed acts that included kidnapping in connection with Count 2. Likewise, the jury was instructed to make a specific finding beyond a reasonable doubt as to whether each Defendant's commission of forced labor included kidnapping or attempted kidnapping. U.S.S.G. § 2H4.1, which governs the Guideline calculation for a violation of Section 1589, instructs that "if another felony offense was committed during the commission of, or in connection with, the involuntary servitude offense," the offense level

---

[1] The final PSR has not been completed for Defendant Hunt as of the date of this pleading. The Government made several objections to Hunt's PSR and is aware that Defendant Hunt also made a number of objections to her PSR. Because Hunt's final PSRs is still pending, the Government will refer to Hunt's initial PSR for purposes of this pleading, noting its objections as appropriate.

should be the greatest of "2 plus the offense level as determined" under U.S.S.G. § 2H4.1, or "2 plus the offense level from the offense guideline applicable to that other offense, but in no event greater than 43." U.S.S.G. § 2H4.1(b)(4). The commentary to USSG § 2H4.1 states that "'any other felony offense' means any conduct that constitutes a felony offense *under federal, state, or local law* (other than the offense that is itself covered by this subpart). When there is more than one such other offense, the most serious offense … is to be used." U.S.S.G. § 2H4.1, app. n. 2 (emphasis added).

The Defendants committed a number of other felony offenses[2] during the commission of, and in connection with, their forced labor violations. Given the jury's verdicts as to the specific issue of kidnapping, the most serious underlying offense is clearly kidnapping and, therefore, the guideline calculations are governed by U.S.S.G. § 2A4.1.

The Defendants need not be convicted of an offense under the federal kidnapping statute for section 2A4.1 to apply. *See, e.g.*, *United States v. Botsvynyuk*, 552 Fed.Appx. 178, 184 (3rd Cir. 2014); *United States v. Blanks*, 500 Fed. Appx. 395, 400 (6th Cir. 2012); *United States v. Douglas*, 646 F.3d 1134, 1138 (8th Cir. 2011). Indeed, the Sixth Circuit has "made clear that the cross-reference [to section 2A4.1] is not limited to 'offenses charged in the indictment or that resulted in a conviction.'" *United States v. Grimes*, 348 Fed. Appx. 138, 140 (6th Cir. 2009) (citing *United States v. Cowan*, 196 F.3d 646, 649 (6th Cir. 1999) and *United States v. Voyles*, 995 F.2d 91, 93 n. 3 (6th Cir. 1993)). While 18 U.S.C. § 1201 requires proof of interstate

---

[2] In addition to the Defendants conviction for Count 4 of the indictment (Deception to Obtain a Controlled Substance), the Defendants also committed a number of state felony offenses during, and in connection with, their forced labor offense, including, but not limited to: Aggravated Assault (Ohio Rev. Code § 2903.12); Assault (Ohio Rev. Code § 2903.13); Kidnapping (Ohio Rev. Code § 2905.01); Theft (Ohio Rev. Code § 2913.01); and Endangering Children (Ohio Rev. Code § 2919.22).

4

transport as a jurisdictional element, interstate travel is not a required element to define kidnapping where there is an independent basis for the exercise of federal jurisdiction. *See United States v. Guidry*, 456 F.3d 493, 510 (5th Cir. 2006) (holding that "[f]ederal jurisdiction exists without interstate abduction because [the defendant's] action constituted a violation of [the victim's] constitutional rights."). Furthermore, *Guidry* counsels that if the specific statute (in this case, Section1589) does not require "kidnapping" to comport with the elements of the federal kidnapping statute, courts should define sentencing enhancements according to their "generic, contemporary" meanings. *Id*.

Because the most serious "other felony offense" committed by the Defendants in connection with their forced labor violations was kidnapping, and the jury unanimously found that their conduct involved kidnapping, the PSR properly cross-references to U.S.S.G. § 2A4.1 when calculating the Defendants' advisory guideline ranges. Under section 2A4.1, the base offense level is 32.

### 1. Serious Bodily Injury

The PSR for both Defendants properly added two levels to their base offense level pursuant to U.S.S.G. § 2A4.1(b)(1) because S.E. sustained serious bodily injury. The commentary to section 2A4.1 refers to U.S.S.G. §1B1.1 for the definition of "serious bodily injury." Section 1B1.1 defines serious bodily injury as "injury involving extreme physical pain or the protracted impairment of a bodily member, organ, or mental faculty; or requiring medical intervention, such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, app. n. 1(L). The evidence and testimony presented at trial conclusively established that S.E. suffered from repeated serious bodily injury during the commission of the conspiracy, forced labor, and deception to obtain controlled substances offenses. Specifically, the evidence presented at trial

5

established that during the commission of these offenses, S.E.'s bodily injuries included, but were not limited to: (1) Callahan kicking S.E. in the hip with steel-toe boots (Trial Trans. at pp. 3677-78; 3680-81; 3929-30; 4016); (2) Callahan kicking S.E. in the mouth so hard that her tooth was loosened (*Id.*); (3) Hunt punching S.E. in the face (*Id*. at 3607-09); (4) Hunt beating S.E. with a wooden fence post (*Id*. at 3563; 3594-95); (5) Hunt's juvenile son shooting S.E. in the arm with a BB gun (*Id*. at 3702-10; 3937); (6) Silsby smashing S.E.'s hand with a rock, at the encouragement of Callahan and Hunt (*Id*. at 3012; 3666; 4062); and (7) S.E.'s hand being slammed in a steel door (*Id*. at 3657-60; 3918-20). Each of these injuries involved physical pain and the majority of them required S.E. to seek medical assistance. Indeed, it was part of the Defendants' scheme to inflict such severe injury on S.E. that medical professionals would prescribe her with narcotic pain medication, which the Defendants then forced S.E. to give to them so that they could crush and snort the pain pills.

S.E.'s various medical records (Gov. Ex. 80a-80h) were also introduced into evidence and detail the number and type of serious injuries S.E. suffered during the time period that she was forced to labor for the Defendants.

For these reasons, an additional two levels should be added to the base offense level for both Defendants.

    **2. Dangerous Weapon**

The PSR for both Defendants also correctly added two additional levels pursuant to U.S.S.G. § 2A4.1(b)(3) because the Defendants used dangerous weapons in the course of carrying out their crimes. The commentary to section 2A4.1 again refers to section 1B1.1 for the definition of dangerous weapon, which reads: "a dangerous weapon is (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of

6

inflicting death or bodily injury but (I) closely resembles such an instrument…" U.S.S.G. § 1B1.1, app. n. 1(D).  Again, the evidence at trial conclusively established that the Defendants used multiple dangerous weapons during the commission of, and in connection with, their crimes.  Moreover, because the jury convicted Callahan and Hunt of conspiracy to commit forced labor/deception to obtain a controlled substance, the Defendants are equally culpable for the actions that the other individuals in the conspiracy took to further the conspiracy's purpose, regardless of whether it was Callahan, Hunt, Silsby, or Brown who actually "used" the dangerous weapon.  Certainly using dangerous weapons to intimidate, threaten, and manipulate S.E. were acts in furtherance of the conspiracy; therefore, Hunt and Callahan should both be held responsible for all the occasions in the conspiracy when a dangerous weapon was used.

The evidence at trial showed that Callahan, Hunt, Silsby, and Brown used the following dangerous weapons (as dangerous weapon is defined under the Sentencing Guidelines) during their offense: (1) a firearm (Trial Trans. at pp. 3685-86); (2) a rock (*Id*. at 3037-39; 3918-20); (3) a wooden fence post (*Id*. at 3563; 3594-95); (3) a BB gun (*Id*. at 3702-10); and (4) a knife (*Id*. at 3601).

For these reasons, an additional two levels should be added to the base offense level for both Defendants.

### 3. More than Thirty Days Servitude

The PSR for both Defendants also properly adds an additional two levels to the base offense level pursuant to U.S.S.G. § 2A4.1(b)(4)(A) because the Defendants held S.E. in a condition of involuntary servitude for more than 30 days.  Indeed, the Defendants held S.E. in a condition of involuntary servitude for almost two years.  The evidence at trial established that the

Defendants held S.E. in a condition of involuntary servitude from at least January 2011[3], until S.E. escaped on October 24, 2012.

For these reasons, an additional two levels should be added to the base offense level for both Defendants.

### B. Vulnerable Victim

The PSRs for both Defendants also properly added an additional two levels pursuant to U.S.S.G. §3A1.1(b)(1) to the base offense level because S.E. was a vulnerable victim. It was clear not only from S.E.'s testimony, but also from the testimony of many other individuals who interacted with S.E., that S.E. was "unusually vulnerable" due to her "mental condition" and other life circumstances. U.S.S.G. § 3A1.1, app. n. 2. Multiple witnesses at trial, including Officer Kim Mager, testified to hearing Callahan and Hunt calling S.E. "slow" and "retarded." (Trial Tran. pp. 601; 2300-01). Indeed, even Hunt testified that she was aware of S.E.'s limitations from the car accident (*Id.* at 2945). Moreover, S.E.'s Social Security Administration records (Gov. Ex. 10a-10i) and medical records (Gov. Ex. 80a-80h), which were admitted into evidence, detail S.E.'s cognitive disabilities.

---

[3] The Government submits that there was more than sufficient evidence presented at trial to show that the Defendants recruited S.E. (i.e., seized upon her extreme cognitive limitations and other special vulnerabilities to convince her to stay with them at a time when they desperately needed additional money). To be sure, S.E. and B.E. were not immediately treated poorly; indeed, the Government highlighted this in its opening statement. There was testimony during trial that S.E. was forced to start cleaning for the Defendants and going to the store for them as soon as she started staying at their apartment. However, even if this Court decides to disregard the period when S.E. and B.E. were permitted to sleep upstairs, there is no question that S.E. was being held in a condition of involuntary servitude when she was held in the basement. The testimony during trial established that this occurred around the time that Hunt was permitted to resume visitation with her oldest son at the apartment, which was in approximately January, 2011.

There is no question that S.E. was a vulnerable victim and that two additional levels should be added to the offense level for both Defendants.

### C. Use of a Minor

The Government submits that an additional two-level enhancement is also appropriate for both Defendants, pursuant to U.S.S.G. § 3B1.4, because they used minors both to commit their crimes and to assist in avoiding detection of their illegal conduct. The Application Notes to U.S.S.G § 3B1.4 defines "used or attempted to use" to include "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4, app. n. 1. The application notes also state that "if the defendant used or attempted to use more than one person less than eighteen years of age, an upward departure may be warranted." *Id.*, app. n. 3. This enhancement focuses on whether the defendant used a minor to commit or avoid detection for a crime, "not whether the minor knew that he was being used to commit a crime." *United States v. Calimlim*, 538 F.3d 706, 718 (7th Cir. 2009) (citing *United States v. Ramsey*, 237 F.3d 853, 861 (7th Cir. 2001). Indeed, "whether the minor understands what is going on is irrelevant." *Id.* *See also United States v. Wise*, 278 F. App'x 552, 562 (6th Cir. 2008) (citing *United States v. Jenkins*, 229 F. App'x 362, 369 (6th Cir. 2005)).

In *United States v. Yancy*, the Sixth Circuit affirmed the application of the enhancement when the defendant gave the minor "general instructions and a tool (cell phone) to carry out his role in the robbery (identifying and/or distracting the intended victim)." *United States v. Yancy*, 725 F.3d 596, 599 (6th Cir. 2013). The court concluded that "[W]ithin the context of the application note, this conduct certainly qualifies as 'directing, commanding, encouraging, ... counseling, [or] training' the minor for the offense. It matters not whether [the minor]

9

contributed to the planning of the crime … section 3B1.4 does not require substantial use of a minor, only use or attempted use of a minor." *Id* (internal citations omitted).

In this case, both Defendants used Hunt's four juvenile sons, as well as B.E., to commit forced labor and deception to obtain controlled substances. Both Defendants also used Hunt's four sons and B.E. to assist in avoiding detection of, and apprehension for, their criminal conduct. Specifically, the evidence at trial established that Hunt's juvenile sons physically abused S.E. and B.E., often in the presence of Hunt and Callahan. This abuse included, but was not limited to: (1) Hunt's juvenile sons hitting, kicking, and throwing B.E. across the room (Trial Trans. at pp. 3675); (2) Hunt's juvenile son shooting S.E. with a BB gun when S.E. refused to comply with Hunt's demand that S.E. rub her face in her own feces (*Id*. at 3702-10); (3) Hunt's juvenile sons kicking S.E. (*Id*. at 3676); (4) Hunt's juvenile son smacking B.E. (*Id*. at 3007); and (5) Hunt's juvenile boys tying up B.E. (*Id*. at 3738-43).

The evidence at trial also established that the Defendants used B.E. to facilitate the offense by threatening and abusing B.E. in order to compel S.E. to obey their commands. The Defendants also used B.E. to avoid detection of their offense by repeatedly threatening S.E. that B.E. would be taken away from S.E. if S.E. ever told anyone how they were mistreating S.E. Finally, the Defendants Callahan and Hunt also used B.E. to commit the offense by holding B.E. while S.E. was forced to go to the store and make purchases for Callahan and Hunt. By holding B.E. at their residence, Callahan and Hunt continued to maintain control over S.E. and ensure that S.E. returned to their residence, without speaking to law enforcement.

For these reasons, an additional two levels should be added to both Defendants offense levels pursuant to section 3B1.4.

10

### D. Role in the Offense

The PSR also properly added an additional two levels for both Defendants pursuant to U.S.S.G. § 3B1.1(c) because both Callahan and Hunt were the organizer, leader, manager, or supervisors of the criminal conspiracy in this case. The evidence at trial established that Callahan ordered Brown to hide S.E. and keep her away from the windows so that children's services wouldn't see her. The evidence at trial also showed that Hunt ordered Silsby to monitor S.E. while S.E. was at the emergency room, and that Hunt ordered Brown and Silsby to retrieve S.E. from her mother's apartment and bring S.E. back to the Defendants apartment.

Moreover, Callahan and Hunt certainly benefitted from the crime (obtaining S.E.'s labor and services) to a much greater degree than either Brown or Silsby. Callahan and Hunt were the two members of the conspiracy who were involved in every aspect of the crimes in this case. A two level enhancement for their aggravated role in the conspiracy is appropriate.

### E. Obstruction of Justice - Hunt

The Government submits that there should be an additional enhancement to Defendant Hunt's offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1 of the Sentencing Guidelines, which mandates a two-level increase to a defendant's offense level when he "willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the . . . offense of conviction." U.S.S.G. § 3C1.1. Application note four indicates that the adjustment applies to "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so, [and] committing, suborning, or attempting to suborn perjury." Hunt obstructed when she committed perjury in her trial testimony as to a material matter in the case.

11

The commentary to section 3C1.1 states that "material matter means that the statement, "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 n.6.  Hunt committed perjury regarding many material maters in the case, including the abuse, threats, and force she and Callahan exerted on S.E., as well as the labor S.E. was required to perform for them.  Hunt basically denied every incriminating statement to which numerous Government witnesses testified.  The jury rejected Hunt's testimony, thus confirming the validity of the Government witnesses. The Court should therefore make findings to support the enhancement:

> the court must 1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Boring*, 557 F.3d 707, 712 (6th Cir. 2009) (internal quotation marks omitted); *see United States v. Kennedy*, 714 F.3d 951, 961-62 (6th Cir. 2013). The elements of perjury are "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Kennedy*, 714 F.3d at 962 (quoting *Boring*, 557 F.3d at 712).

*United States v. Rugala*, 532 Fed. Appx. 620, 622 (6th Cir. 2013).

Hunt's knowing false statements under oath, concerning a matter material to the case, include, but are not limited to:

1)   Hunt testified that she never forced anyone to clean her home and never threatened someone that if they didn't clean, they would be hurt. Hunt claimed that she always said "please" and "thank you."  (Trial Trans. at 2986).  This is contradicted by Curtis Stackhouse and others (*Id*. at 1931-33);

2)   Hunt testified that she never forced S.E. to clean up after dogs or forced S.E.'s face in dog excrement.  (Id. at 3035-36).  This is contradicted by Curtis Stackhouse (*Id*. at 1931-33);

12

      3)      Hunt testified that she never slapped, punched, kicked, or hit S.E. in the ribs, and the only time she had physical contact with S.E. was on that one occasion. (*Id*. at 2976). This is contradicted by Rachel Pryor (*Id*. at 2194-95) and S.E. (*Id*. at 1131, 1175-76, 1245);

      4)      Hunt testified that she never used the videos to threaten S.E. or threatened S.E. with turning her into family services. (*Id*. at 3060). This is contradicted by Pryor (*Id*. at 2181-82) and S.E. (*Id*. at 1167 and 1504); and

      5)      Hunt testified that she never told S.E. to physically discipline B.E. (*Id*. at 3069-70). This is contradicted by Silsby (*Id*. at 573-74, 576) and S.E. (*Id*. at 1311-1314).

      Accordingly, based upon Hunt's knowing false testimony concerning material issues in this case, a two-level enhancement is appropriate.

**III.     Conclusion Regarding Guideline Calculations**

Regardless of the Court's finding on either the use of a minor or obstruction enhancements, the end result of the guideline calculations for both Defendants is a Level 43, which is a life sentence. And it is a life sentence range no matter what Callahan and Hunt's criminal history categories are found to be.  As will be discussed more at the sentencing hearings in this case, the Defendants extreme, cruel, and horrific conduct establishes that the most significant term of imprisonment contemplated by the Guidelines is the only sentence sufficient, and still not greater than necessary, for both Jordie L. Callahan and Jessica L. Hunt.

        Respectfully submitted,

        STEVEN M. DETTELBACH
        United States Attorney

By:   /s/ Chelsea S. Rice
        Chelsea S. Rice (OH: 0076905)
        Thomas E. Getz (OH: 0039786)
        Assistant United States Attorneys
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3752/3840
        (216) 522-8355/7358 (facsimile)
        Chelsea.Rice@usdoj.gov
        Thomas.Getz@usdoj.gov

## CERTIFICATE OF SERVICE

     I hereby certify that on this 16th day of July 2014 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                                  /s/ Chelsea S. Rice
                                                Chelsea S. Rice
                                                Assistant U.S. Attorney