PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA L. HUNT, | ) | |
| | ) | CASE NO. 1:17CV0585 |
| Petitioner, | ) | (1:13CR0339) |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | [Resolving ECF No. 224] |
| | | |
| JORDIE L. CALLAHAN, | ) | |
| | ) | CASE NO. 1:17CV0640 |
| Petitioner, | ) | (1:13CR0339) |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | [Resolving ECF No. 226] |

Before the Court are Petitioners Jessica L. Hunt and Jordie L. Callahan's Motions Under

28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF

Nos. 224 and 226).[1]  The Court has been advised, having reviewed the record, the parties' briefs,

and the applicable law.[2]  For the reasons stated below, the motions are denied.

---

[1]  The docket references will be to the criminal case, not the related civil case,
1:17CV0585.

[2]  Although the § 2255 petitions were not consolidated, the Court reviews them
together in order to make determinations on the issues presented by both petitions.

# I. Background

## A. Procedural Background

On July 16, 2013, a federal grand jury, in the Northern District of Ohio, returned a five-count indictment charging Jessica L. Hunt and Jordie L. Callahan ("Petitioners") along with another individual named Dezerah Silsby with: conspiracy, in violation of 18 U.S.C. § 371 (Count 1); holding the victims ("S.E." and "B.E.") in a condition of forced labor and involuntary servitude, in violation of 18 U.S.C. § 1589(a) and (d) (Count 2); theft and embezzlement of federally-funded benefits in violation of 18 U.S.C. § 641 (Count 3); acquiring possession of hydrocodone (Vicodin), a Schedule III controlled substance by deception, in violation of 21 U.S.C. § 843(a)(3) and (d)(1) (Count 4); and witness tampering, in violation of 18 U.S.C. § 1589(a) and (d), and 18 U.S.C. § 1512(b)(1), (b)(3), and (c)(2) (Count 5). Indictment (ECF No. 10).

On November 19, 2013, the Court held a pretrial conference. During this hearing, the Court discussed with Hunt the fact that her attorneys, Carolyn M. Kucharski and Edward G. Bryan, were under investigation for an unrelated matter. ECF No. 207 at PageID #: 6552-53. Hunt then expressed that she was aware of this issue and wanted to proceed with her current counsel. ECF No. 207 at PageID #: 6552-53. Callahan was represented by attorney Donald Butler. ECF No. 226 at PageID #: 7170.

Between November 2013 and the trial date, Petitioners' counsel ("trial counsel") filed numerous pretrial motions, including: Joint Motion to Produce Juvenile Witnesses (ECF No. 42); Motion to Prepare Official Transcripts at Government's Expense by Callahan (ECF No. 70);

(1:17CV0585; 1:17CV0640)

Motion to Revoke Hunt's Detention Order (ECF No. 48); Motion to Compel Production of

Transcripts/Records by Hunt (ECF No. 49); Motion *In Limine* to Preclude Testimony by

Callahan (ECF No. 68); Motion for Psychiatric Exam of S.E. by Callahan (ECF No. 69). Hunt's

counsel also filed responses in opposition to the government's Motions *In Limine*.  ECF No. 80.

On February 4, 2014, the Court held a final pretrial, where Petitioners' counsel argued

extensively for their clients.  ECF No. 209 at PageID #6603.  Petitioners' counsel did not ask the

court for another continuance, nor did they indicate that they needed additional assistance in

locating witnesses.  ECF No. 209 at PageID #6603.  Prior to the trial date, Petitioners' counsel

also filed detailed trial briefs (ECF Nos. 92, 95) and proposed jury instructions (ECF No. 93).

On February 18, 2014, the twelve-day trial commenced.  ECF No. 188 at PageID #: 6387.

During the trial, the jury was presented with extensive evidence.  "The government called thirty-

five witnesses and [the Court] admitted hundreds of exhibits, including photographs, social

media records, medical records, audio and video recordings, police reports, and financial

records."  ECF No. 233 at PageID #: 7214.  On March 7, 2014, the jury convicted Petitioners of:

conspiracy (Count 1); forced labor (Count 2); and acquiring a controlled substance by deception

(Count 4).  ECF No. 130 at PageID #: 2361-65; ECF No. 131 at PageID #: 2373-77.  The jury

also found, via special verdict forms, that each forced labor violation included the offense of

kidnapping or attempted kidnapping under 18 U.S.C. § 1589(d). ECF No. 130 at PageID #: 2363;

ECF No. 131 at PageID #: 2375.

On May 28, 2014, Petitioners' counsel filed a lengthy 80-page joint motion for acquittal

and a 27-page motion for a new trial based on the sufficiency of the evidence.  ECF Nos. 167,

168. The motions challenged the sufficiency and weight of the evidence presented, the legal instructions and verdict forms given to the jury, and the Court's rulings denying a mental examination of S.E. and limiting the cross-examination of a witness. ECF No. 188 at PageID #: 6396. The motion for acquittal directly referred to a man named Glenn Stackhouse in reference to a "broken window" story that was already presented to the jury. ECF No. 167 at PageID #: 5983-84. The motions were denied on July 21, 2014. ECF No. 188.

Prior to sentencing, trial counsel also filed numerous sentencing memoranda on behalf of Petitioners. *See* ECF Nos. 179, 180, 185. On July 22, 2014, the Court conducted Callahan's sentencing hearing, during which his counsel successfully argued that he should receive a sentence below the guideline's range of life imprisonment. ECF No. 190 at PageID #: 6427-29. The Court then sentenced Callahan to concurrent terms of imprisonment as to each count, with the longest term being 360 months for the forced labor violation. ECF No. 190 at PageID #: 6427-29. On July 24, 2014, the Court conducted Hunt's sentencing hearing, at which her counsel also successfully argued that she should receive a sentence below the guideline's range of life imprisonment. ECF No. 191 at PageID #: 6433-35. The Court sentenced Hunt to concurrent terms of imprisonment for each count, the longest of which was 384 months for her forced labor conviction. ECF No. 191 at PageID #: 6433-35.

On August 5, 2014, the Court entered final judgments against Petitioners. ECF Nos. 190, 191. Petitioners filed notices of appeal on the same day. ECF Nos. 192, 193. Petitioners retained their trial counsel for the appeals. ECF Nos. 192, 193.

(1:17CV0585; 1:17CV0640)

On September 8, 2015, the Court of Appeals for the Sixth Circuit affirmed the convictions and sentencing. *United States v. Callahan*, 801 F.3d 606, 613 (6th Cir. 2015) (ECF No. 215). Petitioners moved for a rehearing *en banc*, which was denied. *Id.*

On February 15, 2016, Petitioners jointly filed a petition for a writ of certiorari in the United States Supreme Court. ECF No. 217. The writ was denied on March 25, 2016. *Hunt v. United States*, 136 S. Ct. 1477 (2016).

One of the instant motions was filed on March 20, 2017 by Hunt with the assistance of counsel, Vanessa Malone, from the Office of the Federal Public Defender. ECF No. 224. Vanessa Malone has since withdrawn as counsel in the instant case, after the Court denied Hunt's motion to substitute counsel. ECF Nos. 225, 236. Callahan's *pro se* motion was filed on March 27, 2017. ECF No. 226.

**B. Factual Background**

The Sixth Circuit described the factual background of the instant case as follows:

The evidence presented at trial told the story of two vulnerable individuals — S.E., a developmentally-disabled young woman, and her minor daughter, B.E. — held in subhuman conditions and subjected to continual and prolonged abuse.

S.E. has a documented history of cognitive impairment, and she and B.E. struggled to eke out an existence at the margins of society. When S.E. turned eighteen, she was kicked out of her mother's house. She did not have a relationship with her biological father, and she had no family members willing to take her in. S.E. moved frequently and was often homeless. She relied on her social security benefits and other government assistance to survive and care for her daughter.

S.E. became acquainted with Defendants through their mutual association with a group of people in their small town who abused narcotics and shoplifted together. On one occasion, S.E. was arrested for shoplifting and

spent several weeks incarcerated. When she was released from jail in May 2010, she agreed to move in with Defendants because she had no other place to stay. Shortly thereafter, she regained custody of B.E., who was then three years old.

Defendants lived in Apartment 2 of a building that contained three units. Although S.E. and B.E. initially lived with Defendants as traditional roommates, the relationship quickly deteriorated. Defendants forced S.E. to clean the apartment, do yardwork, care for their dogs, and run various errands for them. Defendants also forced S.E. and B.E. to sleep in the unfinished basement of the apartment, and later, in a sparsely furnished upstairs bedroom. Both rooms locked from the outside, and Defendants confined S.E. and B.E. to these rooms at night. Because S.E. did not have access to the lavatory when she was locked in these rooms, she was forced to soil herself or relieve herself on the floor. In one instance that S.E. soiled herself, Hunt forced her to smear the feces on her face.

Defendants would let S.E. out of the locked room in the morning, on the condition that she do their bidding. She was forced to work from morning until night, and there was witness testimony that S.E. was constantly cleaning the apartment, often while Defendants sat and watched. On one occasion, Defendants' drug dealer saw S.E. performing maintenance work on the building, and Hunt told the drug dealer that S.E. had better do the work "if she knows what's good for her." S.E. complied with Defendants' demands because she believed they would physically assault her, as they had done in the past.

Defendants also forced S.E. to care for their dogs. S.E. had to feed the dogs and take them for walks individually. She also had to clean up after the dogs when they urinated or defecated in the house. There were numerous occasions when Hunt grabbed S.E. by the hair and shoved her face in dog urine and feces if she did not clean up the messes quickly enough. Witnesses testified that S.E. seemed terrified and that Callahan boasted that it was S.E.'s job to clean everything and keep the house tidy. Defendants also allowed the dogs to abuse S.E. and B.E.

It apparently was also S.E.'s job to run errands for Defendants. They forced her to go to a nearby convenience store and purchase cigarettes, candy, and soda for them. They imposed strict time limits for these trips and warned S.E. not to talk to anyone while she was out. If S.E. exceeded the time limit or Defendants suspected that she had talked to anyone, she was punished. On one occasion when S.E. exceeded Defendants' time limit, Callahan interrogated

S.E. while forcing her to submit to "five finger fillet"—a "game" wherein S.E. spread her fingers and laid her hand on a table, and Callahan stabbed back and forth between her fingers with a knife. On another occasion when S.E. took too long to run an errand, Callahan threatened B.E. at gunpoint. S.E. was also punished if she purchased items that were not on Hunt's shopping list, with Hunt punching S.E. in the face or otherwise striking S.E. in the head on such occasions. All of these ways Defendants used to control S.E. and B.E. had their intended affect—both victims were terrorized.

When S.E. and B.E. were forced to live in the basement, they slept on the concrete floor and only had the clothes they were wearing and blankets covered in filth to keep warm. The cold, rank basement environment was especially hard on B.E., whose face would turn ghostly white because of the cold; S.E. would give B.E. her sweater to wear and hold B.E. close to her chest to keep her warm. Defendants rarely allowed S.E. and B.E. to shower or bathe. Witnesses reported that S.E. often appeared unclean and sickly, emitted a foul odor, seemed fearful, and had bruises on her body.

Defendants would let S.E. out of the basement in the mornings, but forced B.E. to stay there while S.E. performed the work they required of her. S.E. thought about running away to her mother's house while on an errand, but because Defendants kept B.E. locked in the basement while S.E. was working, S.E. never acted on that desire. Defendants also forbade S.E. from eating or feeding B.E. until she returned to the basement at night after completing all assigned tasks. S.E. and B.E. typically ate one meal a day, and their diet generally consisted of unheated canned food, bread, and unrefrigerated lunch meat. Defendants would leave S.E. and B.E.'s food for the evening on the steps leading into the basement, and Hunt beat S.E. when S.E. tried to take food from the refrigerator.

B.E. was not immune from abuse—one of Hunt's sons tied her up with rope and kept her bound all night because she tried to drink a soda that was not intended for her. Defendants also beat B.E. themselves. Although she was a toddler, they struck her on numerous occasions for soiling herself. Hunt's sons also assaulted B.E. on various occasions, and Callahan once threw a snake on her.

Callahan also punished S.E. by putting a dog collar around her neck, forcing her into the cage for the dogs, and ordering her to eat dog food. One of Hunt's sons shot S.E. multiple times with a BB gun for disobeying an order. Daniel Brown, an indicted co-conspirator, also helped Defendants assault and humiliate S.E. when they discovered that S.E. planned to escape. Brown

shaved S.E.'s head, wrote degrading obscenities on her face, and slammed her head into a kitchen sink. Callahan and Hunt supplemented this humiliation and abuse by kicking S.E. in the face and throwing a soda bottle at her.

Defendants also ordered S.E. to beat B.E., and they recorded these beatings on their cell phones. Brown was also present on a few of these occasions and recorded the beatings on his phone as well. Defendants threatened to show the videos to law enforcement if S.E. ever failed to follow their orders or "snitched" on them. They often threatened S.E. with the prospect of having her daughter taken away from her.

S.E. and B.E. managed to escape from the basement one night by accessing another apartment that also led to the basement and exiting through that apartment to walk to S.E.'s mother's house. Upon learning of the escape, Defendants enlisted Brown to bring S.E. back to their home under the guise of a trip to an ice cream parlor. Hunt then told S.E. that if she returned to her mother's house, her mother would call Children's Services and report that S.E. had been abusing her daughter. Unsure what to do, S.E. and B.E. reluctantly returned to Defendants' apartment.

Defendants abused S.E. not only to compel her to do work and punish her for perceived transgressions, they also assaulted her in order to force her to obtain prescription pain killers. On one occasion, Defendants concocted a scheme in which Dezerah Silsby, an indicted co-conspirator, smashed S.E.'s hand in a steel door and with a rock. Defendants then instructed S.E. to go to the emergency room and tell the doctor that she was injured when her daughter accidentally slammed a door. When S.E. returned from the hospital with two painkillers and a prescription for Vicodin, Defendants took the pills from her and sold the prescription to Brown. Another time, Callahan kicked S.E. in the hip with steel-toed boots, and Hunt ordered S.E. to go to the emergency room and tell the medical personnel that she slipped on a patch of ice and fell on a rock. S.E. did as she was told and again received a Vicodin prescription for her injury.

S.E.'s and B.E.'s ordeal ended more than two years after it began, when S.E. was caught shoplifting a candy bar at a local store. When the police offered to take S.E. home, she expressed that she feared Hunt and Callahan, did not want to return home, and would rather go to jail. When S.E. told the police that her daughter was at the apartment, an officer drove S.E. there to retrieve B.E. When B.E. was removed from the home, officers reported that "her hair was patchy and thin, she had no muscle tone, her stomach was distended, her rib cage was sunken in, she had dark circles under her eyes, her skin was poor,

she was dirty, and an unpleasant odor emanated from her body." R. 188 at PGID 6390.

True to their word, Defendants showed the police the videos of S.E. beating B.E. During the investigation into S.E., the police requested assistance from the FBI, which led to the prosecution of the instant case.

*Callahan*, 801 F.3d at 613-16. According to the Bureau of Prisons website (http://www.bop.gov/inmateloc/ (Last visited December 22, 2017)), Hunt has a June 12, 2041 release date. Callahan has a July 3, 2039 release date.

## II. Applicable Law

Under 28 U.S.C. § 2255, a federal inmate is provided with a post-conviction means of collaterally attacking her conviction and sentence. *In re Gregory*, 181 F.3d 713, 714 (6th Cir. 1999). Motions brought under § 2255 are the sole means by which a federal prisoner can collaterally attack a conviction or sentence that she alleges to be in violation of federal law. *See Davis v. United States*, 417 U.S. 333 (1974); *Cohen v. United States*, 593 F.2d 766, 770 (6th Cir. 1979).

Section 2255 sets forth four grounds upon which federal prisoners may ordinarily challenge their conviction or sentence: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting § 2255(a)) (internal quotation marks omitted). "In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional

magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).  Motions to vacate, set aside or correct a sentence pursuant to § 2255 must be filed in the trial court that sentenced the movant.  28 U.S.C. § 2255(a); *Gregory*, 181 F.3d at 714.

A petitioner seeking to vacate, set aside or correct a sentence under § 2255 has the burden of sustaining her contentions by a preponderance of the evidence.  *McQueen v. United States*, 58 Fed.Appx. 73, 76 (6th Cir. 2003).  In order to prevail on a § 2255 motion alleging *constitutional* error, the petitioner must establish that an error of constitutional magnitude occurred that had a substantial and injurious effect or influence on the proceedings.  *McNeil v. United States*, 72 F. Supp.2d 801, 803 (N.D. Ohio 1999) (Economus, J.) (citing *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999)).  In order to prevail on a § 2255 motion alleging *non-constitutional* error, the petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

### III. Discussion

In the instant motions, Hunt asserts three claims.  ECF No. 224.  First, Hunt asserts actual innocence due to newly discovered evidence.  ECF No. 224 at PageID #: 7716.  Second, Hunt asserts that she was denied their Sixth Amendment right to effective assistance of counsel.  ECF

(1:17CV0585; 1:17CV0640)

No. 224 at PageID #: 7125.  Third, Hunt asserts a Fifth Amendment Due Process Clause

violation due to a faulty jury instruction.  ECF No. 224 at PageID #: 7132.

Callahan asserts two claims and enfolds them under the umbrella of ineffective assistance

of counsel.  ECF No. 226.  The Court will discuss Callahan's claims along with Hunt's Claim

Two because the same issues are presented in both petitions.[3]

**A. Evidentiary Hearing**

Because the threshold legal issue before the Court in Claim Two is a legal issue, not

typically requiring the presentation of evidence not already in the record, the Court resolves the

issue of whether Petitioners' trial counsel's performance was deficient on the briefs, files, and

records.  *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983) (holding that "there is no

reason to conduct an evidentiary hearing [on a § 2255 motion] to resolve a purely legal issue").

In *Amr v. United States*, 280 Fed.Appx. 480 (6th Cir. 2008), the Court of Appeals for the

Sixth Circuit held that a prisoner was not entitled to a hearing on an ineffective assistance of

counsel claim when the claim was conclusively refuted by the record.  *Id.* at 485-86.  "[A]

motion under § 2255 is ordinarily presented to the judge who presided at the original conviction

and sentencing of the prisoner.  In some cases, the judge's recollection of the events at issue may

enable [her] summarily to dismiss a § 2255 motion. . . ."  *Blackledge v. Allison*, 431 U.S. 63, 74

n.4 (1977).  The Court finds that the within motion may be resolved without an evidentiary

hearing because the judge's recollection, files and records in this case conclusively show that

───────────────

[3] For efficiency purposes, the Court will refer to both Petitioners' ineffective
assistance of counsel claims as "Claim Two."

11

(1:17CV0585; 1:17CV0640)

Petitioners are not entitled to relief under § 2255.  *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003).

### B. Claim One - Actual Innocence

First, Hunt asserts that she is actually innocent in light of newly discovered evidence - an affidavit from a former neighbor named Glenn Stackhouse III ("Stackhouse Affidavit").  ECF No. 224 at PageID #: 7116.  Petitioner argues that the Stackhouse Affidavit proves her innocence because it "severely undermined the foundation of the government's case against her regarding the forced labor charge and the kidnapping enhancement."  ECF No. 224 at PageID #: 7118.  According to Hunt, "the basement imprisonment and escape story is completely vanquished by the Stackhouse Affidavit."  ECF No. 224 at PageID #: 7118.

To demonstrate actual innocence, a petitioner has the burden to show that "in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  In *Bousley v. United States*, 523 U.S. 614 (1998), the Supreme Court held that a petitioner may raise an actual innocence claim in a 28 U.S.C. § 2255 petition.  However, it is "important to note that in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 624 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  In other words, Hunt's claim only has merit if the affidavit's content is actually new evidence and sufficiently establishes factual innocence beyond a reasonable doubt.

The Stackhouse Affidavit is not "new evidence."  Although the affidavit itself was only produced recently to accompany the instant motion, the record shows that its contents were

already presented to the Court and considered by the jury. Indeed, the Stackhouse Affidavit contains very little information that is even relevant. The crux of the affidavit states that the basements of Apartment 1 and Apartment 2 were physically barricaded from each other with a padlocked door, Stackhouse never heard anyone in the Apartment 2's basement, and that S.E.'s escape story was impossible.[4] Thus, no reasonable jury would have found Petitioner guilty because the affidavit significantly weakens S.E.'s credibility to the jury and strengthens Hunt's testimony, which would ultimately lead to her acquittal.

Even if the Stackhouse Affidavit were to be considered new evidence, Claim One still fails because the Affidavit is insufficient to establish actual factual innocence beyond a reasonable doubt. Petitioner does not assert that the Stackhouse Affidavit actually proves her innocence. Rather, Petitioner merely asserts that the affidavit "would have directly impacted the believability of the Government's witnesses." ECF No. 224 at PageID #: 7123. "Given the contradictions based upon the disinterested tenant of Apartment 1, Jessica Hunt submits that the jury would not have been able to find that the testimony of [S.E.] was credible, and thus, her conviction under 18 U.S.C. § 1589 cannot stand." ECF No. 224 at PageID #: 7124. This argument fails to acknowledge the profuse evidence offered by the government, including thirty-

---

[4] S.E. testified that she escaped from the basement for Apartment 2 by reaching her hand through a hole in the wall dividing the basements for Apartment 2 and Apartment 1, and unlocked the door from the other side. After gaining access to Apartment 1, S.E. claimed that she escaped to her mother's residence on foot with her daughter. ECF No. 149 at PageID #: 3554-56. The Stackhouse Affidavit states that the basement door was padlocked and it was impossible for someone to break into the basement for Apartment 1 from the basement for Apartment 2. ECF No. 224-1 at PageID #: 7142.

five witnesses and the admission of hundreds of exhibits.  Furthermore, Hunt's argument that Stackhouse's affidavit is important because he is a <u>disinterested</u> party is belied by the fact that many of the government's witnesses were also disinterested parties, they to held no special relationship to the victims.

The Sixth Circuit has "repeatedly held that the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a Section 2255 proceeding." *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) (citing *United States v. Shields*, 291 F.2d 798 (6th Cir. 1961)). Here, Petitioners are attempting to have the Court reconsider the sufficiency of the evidence by couching it under an actual innocence claim.  However, "[p]risoners adjudged guilty of crime should understand that 28 U.S.C. § 2255 does not give them the right to try over again the cases in which they have been adjudged guilty." *Davilman v. United States*, 180 F.2d 284, 286 (6th Cir.1950).  "Questions as to the sufficiency of the evidence or involving errors either of law or of fact must be raised by timely appeal from the sentence if the petitioner desires to raise them." *Id*.  In the instant case, Hunt has had her claims adjudicated through the appellate process. The Court will not re-evaluate the sufficiency of the evidence for the third time.

Assuming *arguendo* that the testimony set forth in the Stackhouse Affidavit was presented without challenge, it still fails to overcome the vast amount of other incriminating evidence.  Even if the jury accepts the affidavit's content in its entirety, it merely posits that, S.E., the mentally challenged victim failed to accurately recount the details of a single event.  The affidavit cannot affirmatively prove that S.E. and B.E. were not confined against their will in

both the basement and in the upstairs bedroom. Therefore, Hunt cannot establish that it is more likely than not that no reasonable juror would have found her guilty beyond a reasonable doubt.

The Stackhouse Affidavit is not new evidence and fails to sufficiently establish actual factual innocence. The Court finds that the First Claim is without merit.

### B. Claim Two - Ineffective Assistance of Counsel

Next, Hunt asserts that her Sixth Amendment rights were violated because her counsel was ineffective by: (1) failing to timely investigate and locate Glenn Stackhouse, a critical witness; and by (2) failing to call Jean Eckley as an essential witness during trial. ECF No. 224 at PageID #: 7126-30; ECF No. 238 at PageID #: 7280. Callahan asserts that his counsel, Donald Butler was ineffective by: (1) failing to call two key witnesses;[5] and (2) "was sleeping a substantial amount of time during the trial." ECF No. 238 at PageID #: 7280.

The Supreme Court has established a two-part test for determining whether an attorney rendered ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing professional

---

[5] The Court presumes that Callahan is referring to the same two witnesses submitted by Hunt, Glenn Stackhouse and Jean Eckley, as he failed to explicitly state the names of the two key witnesses in his motion.

(1:17CV0585; 1:17CV0640)

norms." *Id.* at 688. "To establish prejudice, Petitioner must show a reasonable probability that, but for his attorney's errors, the proceedings would have produced a different result." *Ross v. United States*, 339 F.3d 483, 492 (6th Cir. 2003). "When applying *Strickland*, if we can more easily dispose of an ineffective assistance claim based on lack of prejudice, we should follow that route." *Id.*

"Petitioners claiming ineffective assistance of counsel under *Strickland* have a heavy burden of proof." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). The petitioner must demonstrate the constitutional violation because it is "presumed that the lawyer is competent." *United States v. Cronic*, 466 U.S. 648 (1984). Here, Petitioners' arguments fail the *Strickland* test because they cannot show deficiency nor actual prejudice.

First, Hunt asserts that her counsel committed a "critical, egregious error" by failing to timely investigate her case and locate Glenn Stackhouse. ECF No. 224 at PageID #: 7126. As in Claim One, Hunt again alleges that the Stackhouse Affidavit is dispositive because it "reveals potential testimony that cast serious doubt upon the veracity and trustworthiness of the testimony of [S.E.] and the arguments concerning [S.E.]'s alleged basement imprisonment and forced labor." ECF No. 224 at PageID #: 7126. Consequently, Hunt intones this "isolate[d]" error resulted in her conviction. Second, Hunt asserts that her counsel provided ineffective assistance by failing to call Jean Eckley, S.E.'s mother, to provide impeaching testimony about her own daughter. ECF No. 224 at PageID #: 7126. Third, Callahan asserts that his counsel provided ineffective assistance by sleeping a substantial amount of time during the trial. ECF No. 238 at PageID #: 7280.

16

(1:17CV0585; 1:17CV0640)

### i. Deficiency

While trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1250 (6th Cir. 1984). Here, the facts show that Petitioners' counsel was competent.

As previously discussed in Claim One, the Stackhouse Affidavit failed to provide actual new evidence, nor does it sufficiently prove actual innocence. The affidavit's contents were already presented to the Court and considered by the jury. This was the same jury that also considered a vast amount of other incriminating evidence. Furthermore, the procedural history shows that Petitioners' counsel zealously represented their clients by filing numerous pleadings, interviewing and subpoenaing numerous witnesses, preparing extensive trial exhibits, conducting vigorous cross-examinations, and submitting a joint motion for judgment of acquittal and for new trial. It is to be noted that Petitioners relied on the same counsel for their appeal.

Here, Petitioners' argument that their attorneys provided ineffective assistance of counsel by not calling Glenn Stackhouse or Jean Eckley is undermined by the fact that trial counsel never sought additional continuances. Petitioners claim that, in hindsight, they should have called Glenn Stackhouse and Jean Eckley, despite being aware of their existence prior to trial. This fails to meet the *Strickland* deficiency standard because "judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

17

perspective at the time." *Strickland*, 466 U.S. at 669.  The fact that trial counsel chose not to move for additional time or assistance in locating other witnesses shows that they were satisfied with their decisions at that time, and "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case." *Id*.

Hunt states her counsel became aware of Glenn Stackhouse's existence prior to trial, but chose not to diligently pursue him as a witness because they believed that Hunt's story "would either be supported by Mr. Stackhouse's recollection, or contradicted by his recollection of the window incident."  ECF No. 224 at PageID #: 7128.  This suggests that trial counsel made a deliberate and reasonable choice in the process of litigation and fails to heft the heavy burden of proof.  "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

Petitioners' counsel did not behave unreasonably.  Facts show that trial counsel zealously represented their clients in the most professional manner.  They filed numerous pretrial motions, pursued all available legal remedies, and continued their representation during the appellate process.  Indeed, trial counsel acted commendably throughout the entire course of pretrial proceedings and trial, which was recognized by the Court:

> Counsel, I commend you all. I think this was a very well tried case, obviously hard-fought, and I can't imagine how each of you could have performed better than you did.  While this often leaves one side more disappointed than the other, there's absolutely no reason for any attorney in this room to believe that you could have done anything better or differently.

18

(1:17CV0585; 1:17CV0640)

ECF No. 213 at PageID #: 7036.

### ii. Prejudice

Petitioners also fail to meet the second prejudice prong of *Strickland*. "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. "Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial." *Id*. "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense." *Id*. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Here, Petitioners assert that but for counsels' failures, Petitioners would not have been convicted, which satisfies *Strickland's* prejudice requirement. This assertion is nonsensical, as it ignores the prodigious amount of evidence against Petitioners.

The Stackhouse Affidavit focuses mostly on S.E.'s escape from the basement. Petitioners assert that the affidavit proves that S.E.'s basement escape was impossible because the basement door was padlocked. In turn, S.E.'s credibility as a witness would be significantly weakened, and the jury would have found Petitioners innocent. This argument lacks merit. As previously discussed, the relevant information contained within the Stackhouse Affidavit was already

19

presented to the jury during trial. At best, Stackhouse's testimony would have corroborated Hunt's version of the escape story by challenging S.E.'s testimony. However, S.E.'s escape story was also supported by maintenance person Charles McPheeters testimony. ECF No. 147 at PageID #: 2713.

Even assuming the jury would have fully accepted the facts proffered by the Stackhouse Affidavit, Petitioner cannot overcome the ample evidence showing that S.E. and B.E. were also confined in the upstairs bedroom. A cable company employee named Alan Redmon testified that he saw S.E. and B.E. lying on the floor in the unfinished bedroom equipped with a mounted camera. ECF No. 147 at PageID #: 2804-21. Co-conspirator DJ Brown testified that he bolted the upstairs window shut at Callahan's request. ECF No. 153 at PageID #: 4491-92. This was accompanied by a voicemail from Callahan instructing Brown to keep S.E. away from the upstairs windows because she was a "snitch." ECF No. 153 at PageID #: 4494-98. McPheeters also testified that the window was bolted shut. ECF No. 147 at PageID #: 2721. Lastly, another neighbor named Derek Lawrence actually made a complaint to the health department because he suspected that a mentally challenged woman and her child were locked inside the Petitioners' upstairs bedroom. ECF No. 152 at PageID #: 4289-90, 4326-27.

In regards to Jean Eckley, Petitioners fail to provide the Court with a lucid argument as to why counsel's choice to not call upon the victim's mother to testify constitutes a prejudicial error. Hunt submits that "[a]lthough trial counsel have indicated in the affidavits that they actually interviewed Jean Eckley prior to trial, they fail to identify a reasonable, strategic reason not to call Jean Eckley as a witness." ECF No. 224 at PageID #: 7131. This was likely a

strategic decision, as it is doubtful the victim's mother would have provided testimony exonerating Petitioners. The only relevant fact Hunt alleges in support of her argument is that Jean Eckley stated that S.E. had not brought a bag of clothes for her daughter after her escape, as had been testified to by S.E. ECF No. 224 at PageID #: 7131. As with the Stackhouse Affidavit, Hunt cannot sufficiently demonstrate that but for trial counsel's error, the result of the proceeding would have been different.

Even if Glenn Stackhouse and Jean Eckley were to have testified without challenge, it is extremely unlikely the jury would have rendered not guilty verdicts after reviewing the evidence in its totality. Therefore, Petitioners fail to establish prejudice, because "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

In regards to the sleeping lawyer issue, Callahan failed to provide any proof beyond his allegations. The Court is unaware of any evidence within the records to support this claim. Therefore, Callahan fails to demonstrate that he was prejudiced by his counsel's purported drowsiness.

The Court finds that the claim of ineffective assistance of counsel is without merit because Petitioners cannot satisfy the *Strickland* test.

### 3. Claim Three - Jury Instruction Due Process Violation

Finally, Hunt asserts that the Court gave faulty jury instructions, which violated her Fifth Amendment Due Process rights. ECF No. 224 at PageID #: 7132. This argument is procedurally barred because Petitioner is re-hashing the same argument for the fifth time.

(1:17CV0585; 1:17CV0640)

A § 2255 motion may not be used to re-litigate issues already considered on appeal absent highly exceptional circumstances, such as an intervening change in law. *See Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). Petitioner claims that the Court erred when it failed to instruct the jury that a finding of the involvement of kidnapping or attempted kidnapping must be beyond a reasonable doubt. ECF No. 224 at PageID #: 7132.

Petitioner first raised this faulty jury instruction claim in her post-trial motions for acquittal and new trial, which was denied by the Court. ECF No. 188 at PageID #: 6412-15. Petitioner then raised the issue for a second time on direct appeal to the Sixth Circuit, which was denied after a full review. *Callahan*, 801 F.3d at 625-26. The Court of Appeals opined:

> Viewing the instructions as a whole, it is evident that the jury was instructed that their findings had to be made beyond a reasonable doubt. The court instructed them: "Your second duty is to take the law that I give you, apply it to the facts, and decide if the government has proved defendant guilty beyond a reasonable doubt;" The "presumption of innocence stays with the defendant unless the government presents evidence here in court that overcomes the presumption, and convinces you beyond a reasonable doubt that he or she is guilty;" "It is up to the government to prove that a defendant is guilty, and this burden stays on the government from start to finish. You must find a defendant not guilty unless the government convinces you beyond a reasonable doubt that he or she is guilty;" "The government must prove every element of the crimes charged beyond a reasonable doubt;" "To find defendants guilty, every one of you must agree that the government has overcome the presumption of innocence with evidence that proves his or her guilt beyond a reasonable doubt." There was no reference to any other burden of proof throughout trial, and nothing in the record suggests the jury believed that the standard of proof for the special verdict form was anything other than the same standard on which the district court repeatedly instructed them.
> 
> \* \* \*
> 
> Certainly the kidnapping instruction would have been more complete if the district court had again mentioned the reasonable doubt standard. "The instructions as given and taken as a whole, however, were not so confusing, misleading, or prejudicial as to cause a grave miscarriage of justice."

(1:17CV0585; 1:17CV0640)

*Id.* (internal citations omitted) (ECF No. 215). Hunt raised the issue for the third time by petitioning the Court of Appeals for a re-hearing *en banc*, which was denied. *Id*. Petitioner then raised this issue for the fourth time in her petition for writ of certiorari, which was denied. ECF No. 218; ECF No. 233-1 at PageID #: 7225.

Hunt is attempting to re-litigate an issue that was already rejected after careful consideration by the Court of Appeals. This is not permitted in a § 2255 motion. On her fifth attempt, Hunt argues that her faulty jury instruction claim should be reconsidered in light of the Stackhouse Affidavit. ECF No. 224 at PageID #: 7137. Hunt submits that the Stackhouse Affidavit "affects the veracity and trustworthiness of the testimony of key government witness." ECF No. 224 at PageID: #7137. This argument holds little weight. The "veracity and trustworthiness" of a key witness do not constitute a highly exceptional circumstance as required, nor does Hunt assert an intervening change in law. Therefore, Hunt fails to clear the high hurdle required for the Court to re-examine the claim.

The Court finds that the Claim Three is procedurally barred.

### IV. Conclusion

Accordingly, Petitioners Jessica L. Hunt and Jordie L. Callahan's Motions Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF Nos. 224 and 226) are denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of

(1:17CV0585; 1:17CV0640)

appealability.  28 U.S.C. §2253(c); Fed. R. App. P. 22(b).


        IT IS SO ORDERED.


  December 29, 2017                    /s/ Benita Y. Pearson
Date                                  Benita Y. Pearson
                                      United States District Judge